[No. 5335.   Decided December 30, 1904.]

THE STATE OF WASHINGTON, *Respondent,* v. TILLEY
BLANCHE RILEY, *Appellant.*[1]

CRIMINAL LAW—INFORMATION—AMENDMENT—TRIAL—EFFECT OF
SUSTAINING DEMURRER TO INFORMATION AND EVIDENCE—DISCHARGE.
A prisoner is not entitled to a discharge upon the sustaining of a
demurrer to an information or to the evidence, since it is the duty
of the court to correct errors and allow an amendment, and a mis-
trial upon an insufficient amendment does not constitute jeopardy
and is not a bar to another prosecution.

JURORS—COMPETENCY—CHALLENGE FOR CAUSE—DISQUALIFIED BY
OPINIONS. Jurors who have formed opinions regarding the guilt
or innocence of the accused, which it would take evidence to
remove, are disqualified, notwithstanding that they can, or believe
they can, disregard such opinions and try the case according to
the law and the evidence, and overruling challenges for cause to
such jurors deprives the accused of a trial before a fair and im-
partial jury.

Appeal from a judgment of the superior court for Clal-
lam county, Joiner, J., entered June 28, 1902, upon a trial
and conviction of the crime of perjury. Reversed.

*Trumbull & Trumbull,* for appellant.

*George H. Clementson, J. E. Cochran,* and *James G.
McClinton,* for respondent.

FULLERTON, C. J.—The appellant was convicted of
the crime of perjury, and appeals from the judgment and
sentence pronounced against her.

The information upon which the appellant was first
rested was filed on November 29, 1901.   To this in-
formation the appellant filed a demurrer on the ground
that it did not state facts sufficient to constitute a crime,
which demurrer the trial court, after argument heard
thereon, overruled.   On December 21, 1901, the state

[1]Reported in 78 Pac. 1001.

asked and obtained leave of the court to withdraw the first information, and file another one charging the appellant with the same crime. Leave was given accordingly, and a new information was filed on the same day. To this information also the appellant demurred generally, which demurrer the court also overruled. In January 1902, the appellant was tried for the offense charged in the second information; the trial resulting in a verdict of guilty which was returned on the 25th day of that month. On the 27th day of the same month this verdict was, on the motion of appellant, set aside by the court, on the ground that the appellant had not had a fair or impartial trial. After the new trial had been granted, the state asked and obtained leave to withdraw the second information and file a third one, supporting its application by an affidavit pointing out in what particulars, and for what reason, the state deemed the second information faulty and a new one desirable. This motion was granted, over the objection of the appellant. The appellant was thereafter tried upon this third information, found guilty by the jury, and the judgment and sentence pronounced against her, from which this appeal is taken.

The appellant first contends that the several orders of the court referred to, permitting the withdrawal of the informations filed and the filing of new ones against her, amounted to such a gross abuse of discretion as to entitle her to a discharge, and to a dismissal of the prosecution against her. She concedes that it is largely a matter of discretion with the trial court whether or not the prosecution may amend the information in the course of a criminal proceeding, but she contends that the circumstances here were such that the amendment operated to her prejudice, and deprived her of substantial rights. She urges that, when the court overruled the demurrer to the

second information, and overruled an objection to the admission of testimony, made at the trial on the ground that the information did not state facts sufficient to constitute a cause of action, that such rulings became the law of the case binding upon the superior court, not subject thereafter to modification or change by it. She urges further that, after the court became convinced that the demurrer and objection to the admission of evidence were well taken, it was its duty to discharge the defendant, rather than grant a new trial and afterwards permit the information to be amended; that these rulings tended to mislead her, as she would not have filed a motion for a new trial had she understood that the court was going to grant it on the ground of the insufficiency of the information, but would have appealed directly from any judgment the court might have pronounced against her.

It is doubtless true that, if the rulings of the trial court complained of prevented the appellant from having a fair and impartial trial on the merits of the controversy, or if they deprived her in any way of a substantial right, guaranteed her by law, which would entitle her to a judgment of acquittal without a determination of the merits, the rulings amounted to error, and she is now entitled to have such a judgment directed in her favor. But we are unable to see in what way the court's rulings could have any such result. It is not error for a court to allow the information to be withdrawn, and another more perfect one be substituted in its stead. *State v. Gile,* 8 Wash. 12, 35 Pac. 417; *State v. Hansen,* 10 Wash. 235, 38 Pac. 1023; *State v. Lyts,* 25 Wash. 347, 65 Pac. 530. Nor was it error to do so after the court had first considered it and adjudged it sufficient. No litigant has a vested right to have an error perpetuated in the record.

If the trial court finds, at any stage of the proceedings prior to the entry of final judgment, that it has committed an error that will render its final judgment voidable or void, it is not only its right but its duty to correct it. So here, if it be true, as the appellant says, that the information on which she was first tried did not state facts sufficient to constitute a crime, it was the duty of the court to set the verdict aside, and allow a new and sufficient information to be filed, and put the appellant to trial thereon. A trial on an insufficient information is a mistrial if a verdict of guilty results. It does not constitute jeopardy, and is not a bar to a subsequent prosecution. There was, therefore, no obligation on the part of the court to discharge the appellant, either on her motion made at the conclusion of the evidence, or at other stages of the case. On the contrary, it was the court's duty, if he believed a crime had been committed and that the appellant had committed that crime, to hold her for further proceedings, so that the question of her guilt could be submitted to the determination of a jury on a sufficient information. Nor would the appellant have been entitled to a discharge had judgment been entered upon the verdict on the first trial, and an appeal therefrom taken to this court, and the judgment reversed for insufficiency of the information. This court will direct a discharge of the defendant, on the reversal of a judgment of conviction, only when it appears that no crime whatever has been committed. Whenever it reverses for mere error committed by the trial court, whether that error be the holding that an insufficient indictment or information is sufficient, or error in the proceedings occurring at the trial proper, it will direct that the defendant be held for further proceedings. This is not only the rule to be derived from the general laws relating to the criminal prac-

tice, but it is the special mandate of the statute. Bal. Code, Title, Procedure in Criminal Actions. Also, id., § 6532.

In the case before us the order of the trial court permitting the information to be withdrawn, and another one filed in its stead after trial, not only did not violate any legal right of the appellant, but was directly within the court's powers and duties. The appellant is not, therefore, entitled to a reversal of the judgment followed by an order directing her discharge from custody.

Of the errors assigned which call for a new trial, the most serious are on the rulings of the court to the challenges for cause, made to several jurors when being examined touching their qualifications to sit as such.

Juror Kilby testified, that he had heard the facts of the case discussed, and had read newspaper accounts concerning it; that he had both formed and expressed an opinion as to the guilt or innocence of the defendant; that he had that opinion at the time he was being examined and would have it until it was removed by evidence.

Juror Duncan testified, that he had heard parties state what purported to be the facts in the case, and had probably talked to a juror who had set on the first trial of the defendant; that he had both formed and expressed an opinion as to the guilt or innocence of the defendant, and had such an opinion at the time he was being examined; that he would retain that opinion until removed by evidence.

Juror Guttenberg testified, that he had formed an opinion as to the guilt or innocence of the defendant, and had that opinion still; that his opinion was such that it would require evidence to remove it, and that his mind was not unbiased as to the merits of the case; and that if he was sworn as a juror he would enter on the trial having an opinion as to the guilt of the defendant.

Juror Flowers testified, that he had heard what purported to be the facts in the case, and had both formed and expressed an opinion concerning the guilt or innocence of the defendant; that he had taken part in discussions concerning the facts of the case, and had expressed himself freely and pointedly in regard thereto; that his opinion was such that it would require evidence to remove it, and that he did not feel that he was wholly unbiased as regards the question of the guilt or innocence of the defendant.

The examinations of jurors Babcock, Decker, and Ford were not dissimilar. Each acknowledged having formed an opinion which was so far fixed that it would require evidence to remove it. Each of the jurors, however, after testifying substantially as above, were thought to qualify themselves by saying, in answer to leading questions put to them by counsel for the state and by the court, that they could, or believed that they could, try the defendant fairly and impartially on the law and evidence as it should be given them on the trial, disregarding their previously formed opinions; and it was because of such answers that challenges for actual bias interposed to them were overruled.

It seems to be conceded by the state that these jurors were subject to challenge for actual bias under the rule announced by the earlier decisions of this court, particularly by the cases of *Rose v. State,* 2 Wash. 310, 26 Pac. 264; *State v. Coella,* 3 Wash. 99, 28 Pac. 28; *State v. Murphy,* 9 Wash. 204, 37 Pac. 420; and *State v. Wilcox,* 11 Wash. 215, 39 Pac. 368; but it was thought these cases had been modified by later decisions, and that jurors now, although having opinions on the merits of the controversy, who make answer that they can, or believe they can, disregard their preconceived opinions and try the case

according to the law and the evidence, as it may be given them on the trial, are not to be deemed disqualified. The first of the cases relied upon as making this change is *State v. Royse,* 24 Wash. 440, 64 Pac. 742. But it is evident from what is said on pages 445 and 446 of the opinion, concerning the qualifications of the juror there thought to be disqualified, that no such ruling was intended. The court refers to the earlier cases, and points out the distinction between such earlier cases and the case then at bar, saying that it must appear, in order to make the earlier rule operative, that the juror has an opinion upon the question of the guilt or innocence of the defendant, and not a mere impression, as the juror then under discussion was shown to have had.

The same thing may be said of the cases of *State v. Boyce,* 24 Wash. 514, 64 Pac. 719, and *State v. Farris,* 26 Wash. 205, 66 Pac. 412. In the latter case, all of the former decisions of the court were cited, and it was pointed out specially that the answers of the juror in the case then before the court were not the same as in those cases where the answers were held to disqualify. *State v. Croney,* 31 Wash. 122, 71 Pac. 783, may more nearly support the state than any of the cases cited, but it is evident that the court did not, even in that case, intend to lay down the rule that jurors who had both formed and expressed an opinion upon the question of the guilt of the defendant were not subject to challenge for actual bias. This becomes evident when we recall what was said concerning the testimony of the juror to whom the challenge was interposed. Speaking of such testimony, the court said:

· "The whole testimony of the juror shows that he did not intend to state that he had any fixed opinion in regard to what he had read of the matter, but that it was

simply an impression from such reading, without any knowledge of whether what he had read was the fact or not. The amount of credit given to newspaper accounts differs very largely with the individuals who read them, and yet it can scarcely be denied that some impression is made on the mind of every reader who gives time enough to an article to read it at all. But such an impression as this is not such an opinion as would disqualify a juror from passing upon the guilt or innocence of a defendant based upon the testimony adduced at the trial, under proper instructions by the court."

But in the case before us there is no escape from the conclusion that the several jurors had opinions, not impressions, on the question of the guilt of the defendant. These opinions were so far fixed that not only would evidence be required to remove them, but in some instances they had been expressed, and in others an actual bias against the defendant had been created. None of the cases from this court, even the most liberal, hold such jurors qualified. If a juror has an opinion as to the guilt or innocence of the defendant, in any given case, so far fixed that evidence would be required to remove it, he is disqualified as a juror in that case, notwithstanding he may answer that he can, or believes he can, disregard such opinion and try the case according to the law and the evidence that is given upon the trial. There are minds, doubtless, that are capable of laying aside preconceived ideas and opinions, and of arriving at conclusions from particular facts, disregarding and not considering others. But this is an attribute of mind that is acquired by special training and education, and is not an acquirement possessed by the ordinary juryman.

We are of the opinion, therefore, that the appellant did not have a trial before a fair and impartial jury, such as is guaranteed to her by the constitution and laws, and that

for this reason the judgment against her must be reversed
and a new trial awarded.

The information upon which the appellant was con-
victed was sufficient both in form and substance. The
other matters complained of need no special mention, as
they will not recur on a retrial of the cause.

The judgment is reversed, and a new trial awarded.

HADLEY, MOUNT, ANDERS, and DUNBAR, JJ., concur.